UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN JEROME HARRIS,<br><br>　　　　Plaintiff,<br><br>v.<br><br>DOOR DASH, INC.,<br><br>　　　　Defendant. | Case No. 21-cv-09445-JSC<br><br>**ORDER RE: MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 21 |

Kevin Harris, who is proceeding without representation by a lawyer, sued DoorDash for violations of the Fair Labor Standards Act. Defendant seeks to compel arbitration. Because the briefing exposed some ambiguity regarding contract formation, the Court requests additional briefing and evidence. Defendant may file further papers by March 2, 2023. Plaintiff should respond on or before March 23, 2023. Any legal argument should be limited to five pages. Supplementary evidentiary filings may exceed that limit. The hearing scheduled for February 23, 2023 is VACATED.

**BACKGROUND**

**I.    Complaint Allegations**

Plaintiff alleges he worked as a "dasher" for DoorDash between November 23, 2020, and November 29, 2021. (Dkt. No. 7 ¶ 6.) Plaintiff details a week in which he worked 70.5 hours in Maine, New Jersey, and Connecticut; and another week in which he worked 60 hours in Oregon and Washington. (*Id.* ¶ 3.) He never received overtime payments. (*Id.*) He also claims that on one day, in October 2021, he received payment ($5.50 per hour) that was under the minimum wage. (*Id.* ¶ 4.)

**II.    The Arbitration Agreement**

With its motion to compel arbitration, DoorDash submits a declaration from Trevor Reader, the Head of Dasher Growth for DoorDash. Reader avers Plaintiff "first signed up to create

a Dasher account with DoorDash on November 23, 2020." (Dkt. No. 21-2 at 2 ¶ 5.) He also attaches a record showing a user account with the Dasher ID "11085281" accepted the "Terms of Service" on November 23, 2020 and December 16, 2020. (*Id.* at 7.) And he attaches a version of DoorDash's Independent Contractor Agreement as of December 16, 2020.

On the first page, the agreement states in bold:

> **IMPORTANT: PLEASE REVIEW THIS AGREEMENT CAREFULLY. IN PARTICULAR, PLEASE REVIEW THE MUTUAL ARBITRATION PROVISION IN SECTION XI, AS IT REQUIRES THE PARTIES (UNLESS YOU VALIDLY OPT OUT OF ARBITRATION, AS PROVIDED BELOW) TO RESOLVE DISPUTES ON AN INDIVIDUAL BASIS, TO THE FULLEST EXTENT PERMITTED BY LAW, THROUGH FINAL AND BINDING ARBITRATION. BY ACCEPTING THIS AGREEMENT, YOU ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTOOD ALL OF THE TERMS, INCLUDING SECTION XI, AND HAVE TAKEN THE TIME AND SOUGHT ANY ASSISTANCE NEEDED TO COMPREHEND THE CONSEQUENCES OF ACCEPTING THIS AGREEMENT.**

(*Id.* at 8.) Section XI, titled MUTUAL ARBITRATION PROVISION, provides, in part, the scope of disputes covered under the agreement:

> CONTRACTOR and DOORDASH mutually agree to this Mutual Arbitration Provision, which is governed by the Federal Arbitration Act (9 U.S.C. §§ 1-16) ("FAA") and shall apply to any and all disputes arising out of or relating to this Agreement, CONTRACTOR's classification as an independent contractor, CONTRACTOR's provision of Contracted Services to consumers, restaurants, or other businesses, the payments received by CONTRACTOR for providing services to consumers, restaurants, or other businesses, the termination of this Agreement, and all other aspects of CONTRACTOR's relationship with DOORDASH, past, present or future, whether arising under federal, state or local statutory and/or common law[.]

(*Id.* at 11.) The contract explicitly includes the Fair Labor Standards Act in its terms. (*Id.*) It also includes an opt out provision, which is noted in bold typeface. (*Id.* at 12.)

Based on his familiarity with the DoorDash sign up processes in 2020, Reader avers Plaintiff would have been required to agree to the Independent Contractor Agreement to create his DoorDash account. (*Id.* at 3 ¶ 7.) DoorDash also provides a screenshot of the sign-up process as of that date. (*Id.* at 17.) The sign-up page has a blank field for users to input an email address and

a large red button titled "Get Started." (*Id.*) Between the email-field and the button reads "By clicking 'Get Started' below, I agree to the Independent Contractor Agreement and have read the Dasher Privacy Policy." (*Id.*) Below, the "Get Started" button, there is another link titled "Already started signing up?" (*Id.*)

Plaintiff seems to contest that he agreed to the Independent Contractor Agreement. In his opposition, Plaintiff states:

> [I] signed up [with Doordash] year(s) prior [to 2020] during a time where after you signed up online you were prompted to meet an "on-sight" [sic] sign up manager (someone affiliated with Doordash and assigned to facilitate the sign up process). There you were given the materials E.G. Temp-control bag, Dasher card credit card required to make certain door dash purchases and special transactions.

(Dkt. No. 25 at 3.) Thus, Plaintiff claims the Independent Contractor Agreement is "not applicable" to him because in 2020 he "was simply able to log in and begin dashing" without completing the signup flow. (*Id.*) In its reply, DoorDash provides the following response:

> Mr. Harris attempts to dispute DoorDash's records by asserting that he first created a Dasher account "year(s) prior to" 2020. Opp. at 3. While DoorDash's records do, in fact, show an account created by a Kevin Jerome Harris in July 2019, no deliveries were ever completed via this account, which was created with an email account different from the one used by Mr. Harris in connection with both his later Dasher account and communications regarding this lawsuit. And as DoorDash has previously explained, the account through which Mr. Harris did, in fact, provide services as a Dasher could not have been activated without acceptance of the ICA and the terms contained therein.

(Dkt. No. 26 at 4 n.2.) DoorDash does not provide any further business records associating any deliveries with the either the 2020 account or the 2019 account.

**DISCUSSION**

The parties dispute whether Plaintiff agreed to the Independent Contractor Agreement. As an initial matter, Defendant incorrectly asserts an arbitrator should decide whether a valid agreement to arbitrate exists. (Dkt. No. 21 at 9 ("Even if this Court, (as opposed to an arbitrator) were to determine issues of arbitrability, Plaintiff should be compelled to arbitrate his claims pursuant to the FAA because (1) a valid agreement to arbitrate exists . . .") DoorDash gets the order of operations backward. The existence of an arbitration agreement is a question for the

3

Court, not an arbitrator. *See Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014); *see also Reichert v. Rapid Invs., Inc.*, 826 F. App'x 656, 658 (9th Cir. 2020) ("Notwithstanding any delegation clause in the Agreement, 'challenges to the existence of a contract as a whole must be determined by the court prior to ordering arbitration.'") (cleaned up). As the party seeking to compel arbitration, DoorDash bears the burden of proving the existence of an agreement to arbitrate. *Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th Cir. 2023). When, as here, "the making of the arbitration agreement" is at issue, the summary judgment standard applies. *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) (quoting 9 U.S.C. § 4). To prevail under the summary judgment standard, Defendant must show there is no genuine issue as to any material fact regarding formation of the arbitration contract. *Id.; see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Because the briefing exposes some ambiguity regarding contract formation, the Court requests additional submissions on the matter. The Complaint alleges Plaintiff worked as a dasher from November 23, 2020, to November 29, 2021. (Dkt. No. 7 ¶ 6.) Originally, DoorDash represented Plaintiff first signed up as a dasher on November 23, 2020. In his opposition, Plaintiff disputed DoorDash's representation and claims he used an account created long before November 2020 to complete the deliveries. DoorDash then acknowledged (in a footnote in its reply) that Plaintiff signed up in 2019. Although Doordash claims Plaintiff used the November 2020 account to make the relevant deliveries, DoorDash provides no evidence to support this claim. Thus, from the record provided, the Court is unable to answer key questions as a matter of law. For example, what account did Plaintiff use to make the relevant deliveries? Is the November 23, 2020, account associated with Dasher ID 11085281 Plaintiff's actual account? And, given these multiple accounts, what agreement governed the relevant deliveries? Additional submissions are necessary to resolve these issues.

## CONCLUSION

The Court requests additional submissions to clarify the issues raised above. Defendant may file further papers by March 2, 2023. Plaintiff should respond on or before March 16, 2023. Any legal argument should be limited to five pages. Supplementary evidentiary filings may

exceed that limit.

The Court reminds the parties that statements in legal briefs are not evidence. Any evidentiary submissions must come either as declarations, sworn under oath, or in another format recognized under the Federal Rules of Evidence.

As Plaintiff is not represented by counsel, the Court encourages Plaintiff to seek free assistance from the Northern District's Legal Help Center, 450 Golden Gate Avenue, 15th Floor, Room 2796, San Francisco, CA 94102. Plaintiff should make an appointment by calling (415) 782-8982 or emailing fedpro@sfbar.org. The website for the Northern District of California also has information for litigants who are not represented by counsel.

The hearing scheduled for February 23, 2023 is VACATED.

**IT IS SO ORDERED.**

Dated: February 17, 2023

JACQUELINE SCOTT CORLEY
United States District Judge