UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN JEROME HARRIS,<br><br>Plaintiff,<br><br>v.<br><br>DOOR DASH, INC.,<br><br>Defendant. | Case No. 21-cv-09445-JSC<br><br>**ORDER RE: MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 21 |

Kevin Harris, who is proceeding without representation by a lawyer, sued DoorDash for violations of the Fair Labor Standards Act. Defendant seeks to compel arbitration. Because the briefing exposed some ambiguity regarding contract formation, the Court requested additional briefing and evidence. Defendant submitted additional evidence and briefing. Plaintiff did not. After carefully considering the arguments and briefing submitted, the Court concludes oral argument is unnecessary, *see* Civ. L.R. 7-1(b), and GRANTS Defendant's motion to compel arbitration. The parties agreed to arbitrate the claims at issue here. The matter is stayed pending the completion of arbitration.

## BACKGROUND

### I.   Complaint Allegations

Plaintiff alleges he worked as a "dasher" for DoorDash between November 23, 2020, and November 29, 2021. (Dkt. No. 7 ¶ 6.)[1] Plaintiff details a week in which he worked 70.5 hours in Maine, New Jersey, and Connecticut; and another week in which he worked 60 hours in Oregon and Washington. (*Id.* ¶ 3.) He never received overtime payments. (*Id.*) He also claims that on one day, in October 2021, he received payment ($5.50 per hour) that was under the minimum wage. (*Id.* ¶ 4.)

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

**II.     The Arbitration Agreement**

With its motion to compel arbitration, DoorDash submits a declaration from Trevor Reader, the Head of Dasher Growth for DoorDash. Reader avers Plaintiff "first signed up to create a Dasher account with DoorDash on November 23, 2020." (Dkt. No. 21-2 at 2 ¶ 5.) He also attaches a record showing a user account with the Dasher ID "11085281" accepted the "Terms of Service" on November 23, 2020 and December 16, 2020. (*Id.* at 7.) And he attaches a version of DoorDash's Independent Contractor Agreement as of December 16, 2020.

On the first page, the agreement states in bold:

> **IMPORTANT: PLEASE REVIEW THIS AGREEMENT CAREFULLY. IN PARTICULAR, PLEASE REVIEW THE MUTUAL ARBITRATION PROVISION IN SECTION XI, AS IT REQUIRES THE PARTIES (UNLESS YOU VALIDLY OPT OUT OF ARBITRATION, AS PROVIDED BELOW) TO RESOLVE DISPUTES ON AN INDIVIDUAL BASIS, TO THE FULLEST EXTENT PERMITTED BY LAW, THROUGH FINAL AND BINDING ARBITRATION. BY ACCEPTING THIS AGREEMENT, YOU ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTOOD ALL OF THE TERMS, INCLUDING SECTION XI, AND HAVE TAKEN THE TIME AND SOUGHT ANY ASSISTANCE NEEDED TO COMPREHEND THE CONSEQUENCES OF ACCEPTING THIS AGREEMENT.**

(*Id.* at 8.) Section XI, titled MUTUAL ARBITRATION PROVISION, provides, in part, the scope of disputes covered under the agreement:

> CONTRACTOR and DOORDASH mutually agree to this Mutual Arbitration Provision, which is governed by the Federal Arbitration Act (9 U.S.C. §§ 1-16) ("FAA") and shall apply to any and all disputes arising out of or relating to this Agreement, CONTRACTOR's classification as an independent contractor, CONTRACTOR's provision of Contracted Services to consumers, restaurants, or other businesses, the payments received by CONTRACTOR for providing services to consumers, restaurants, or other businesses, the termination of this Agreement, and all other aspects of CONTRACTOR's relationship with DOORDASH, past, present or future, whether arising under federal, state or local statutory and/or common law[.]

(*Id.* at 11.) The contract explicitly includes the Fair Labor Standards Act in its terms. (*Id.*) It also includes an opt out provision, which is noted in bold typeface. (*Id.* at 12.)

Based on his familiarity with the DoorDash sign up processes in 2020, Reader avers

2

Plaintiff would have been required to agree to the Independent Contractor Agreement to create his DoorDash account. (*Id.* at 3 ¶ 7.) DoorDash also provides a screenshot of the sign-up process as of that date. (*Id.* at 17.) The sign-up page has a blank field for users to input an email address and a large red button titled "Get Started." (*Id.*) Between the email-field and the button reads "By clicking 'Get Started' below, I agree to the Independent Contractor Agreement and have read the Dasher Privacy Policy." (*Id.*) Below, the "Get Started" button, there is another link titled "Already started signing up?" (*Id.*)

### III. Additional Evidence

Plaintiff argued he never signed such an agreement because he used an account created in 2019 when making the relevant deliveries. (Dkt. No. 25 at 3.) DoorDash agreed Plaintiff had created a 2019 account, but argued Plaintiff used the 2020 account (after signing the arbitration agreement) to make the relevant deliveries. (Dkt. No. 26 at 4 n.2.) Because DoorDash provided no evidence to support this assertion, the Court requested additional briefing to resolve the ambiguity. (Dkt. No. 27 at 4-5.) In response, DoorDash provided delivery records associating all deliveries in the relevant time period with the 2020 account. (Dkt. No. 28-1 ¶ 13.)

## DISCUSSION

### I. Motion to Compel Arbitration

The agreement specifies the Federal Arbitration Act ("FAA") governs the arbitration agreement. (Dkt. No. 21-2 at 11.) The FAA provides such agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In resolving a motion to compel arbitration under the FAA, a court's inquiry is limited to two "gateway" issues: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. If both conditions are met, the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021).

#### A. A Valid Agreement to Arbitrate Exists.

When, as here, "the making of the arbitration agreement" is at issue, the summary judgment standard applies. *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021)

3

(quoting 9 U.S.C. § 4). To prevail under the summary judgment standard, Defendant must show there is no genuine issue as to any material fact regarding formation of the arbitration contract. *Id. See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Defendant has done so. Based on the additional evidence submitted, no genuine dispute exists regarding contract formation. Plaintiff created an account in 2019. (Dkt. No. 28-1 ¶ 8.) No deliveries are listed under the 2019 account. (*Id.* ¶ 10.) Plaintiff created a second account in 2020. (*Id.* ¶ 11.) Over 400 deliveries are associated with the 2020 account. (*Id.* ¶ 13.) Those 2020-account deliveries encompass the period relevant to Plaintiff's allegations. (*Id.*) And to create the 2020 account, Plaintiff was required to agree to the arbitration agreement. (*Id.* ¶ 12.) Thus, no genuine dispute exists as to whether Plaintiff agreed to the arbitration agreement before engaging in the deliveries relevant to this lawsuit.

**B.     The Agreement Encompasses the Dispute at Issue.**

Plaintiff invokes the Fair Labor Standards Act in his amended complaint. (Dkt No. 7.) The arbitration agreement explicitly covers Fair Labor Standards Act claims. (Dkt. No. 21-2 at 11.) So, the parties agreed to arbitrate the claims in this action. *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) ("Absent some ambiguity in the agreement, however, it is the language of the contract that defines the scope of disputes subject to arbitration.")

## CONCLUSION

Because the parties agreed to arbitrate the claims in the amended complaint, the Court GRANTS Defendant's motion to compel arbitration. The claims against Defendant in this Court are therefore STAYED pending resolution of the arbitration. On or before **November 16, 2023**, Defendant shall file a status update on the status of the arbitration, if any.

**IT IS SO ORDERED.**

This Order resolves Docket No. 21.

Dated: May 9, 2023

_____
JACQUELINE SCOTT CORLEY
United States District Judge

4